FILED

2012 SEP -4 A 10: 09

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

United States District Court for the
Eastern District of Virginia-Civil Division
Richmond, Virginia

**Freda G. Bolling,**
**On behalf of herself**

        **Plaintiffs,**

vs.

**Virginia Department of Health**
Richmond, VA 23219

        **Defendant**

Case No.: 3:12-cv-00593-REP

RESPONSE TO DEFENDANTS MOTION/ADMENDMENT
TO CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY

## RESPONSE TO DEFENDANTS MOTION/ADMENDMENT TO CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY

1. This action arises out of the Defendant Virginia Department of Health's (VDH's) unlawful employment actions against Plaintiff, Freda G. Bolling. Specifically the Plaintiff, Bolling alleges that the Defendant, VDH discriminated against her in violation of the Equal Pay Act ("EPA"), as amended 29 U.S.C.§ 206(d), *et seq.*, and that VDH retaliated against Bolling in violation of the EPA as amended, 29 U.S.C. 5 215(a)(3), *et seq.*

2. Specifically, Bolling asserts in Count I that VDH failed to justly compensate her in violation of the EPA when it discriminated against her on the basis of race and sex by compensating her at a rate less than the rate at which it pays wages to similarly situated employees for equal work on jobs, the performance of which required skill, effort and responsibility, and which were performed under similar working conditions.

3. Bolling further asserts in Count II that VDH retaliated against Bolling in violation of the EPA, as amended 29 U.S.C.§215(a)(3), *et seq.*, in

whole or in part because Bolling filed EEOC charges and internal grievances against VDH management that was discriminating against Bolling basis of sex and/or race by compensating the plaintiff at a rate less than the rate at which it pays wages to similarly situated employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action generally pursuant to 28 U.S.C.§ 1331, as it asserts a claim that arises under the constitution, laws, or treaties of the united states and more specifically under EPA and the Fair Labor Standards Act of June 25, 1938, Chapter 676,52 Stat. 1069,29 U.S.C. §§ 201-210, a law of the United States regulating interstate commerce.

5. Venue in this district and in this division is appropriate pursuant to 28 U.S.C. §§ 1391(b) (3) and 1391(c), because Defendant conducts business in this judicial district and in this division.

## Parties

6. Plaintiff Bolling is a resident of the City of Richmond in the Commonwealth of Virginia, and she is a proper plaintiff in this matter as she is an "employee" as the term is defined in 29 U.S.C. § 203(e).

7. In addition to Plaintiff Bolling, Defendant VDH has employed or does employ other similarly situated employees who are or were employees of Defendant VDH as the term "Employee" is defined by FLSA.

8. Upon information and belief, there are at least twenty similarly situated employees who are or were employed by Defendant VDH as part of

its workforce and are or were Defendant VDH's employees as that term is defined by FLSA.

9. Defendant VDH is headquartered in the City of Richmond in the Commonwealth of Virginia, and its Commissioner maintains an office at 109 Governor Street, 13th floor (Madison Building) Richmond, Virginia 23218. Defendant VDH is a public health organization incorporated under the laws of the Commonwealth of Virginia, and it is a proper defendant in this matter because it is an "employer" as defined in 29 U.S.C. § 203(d).

10. Defendant VDH has a business presence in the Commonwealth of Virginia and/or otherwise conducts business and/or provides services in the Commonwealth of Virginia, employs ten (10) or more persons, and is subject to the personal jurisdiction of this Court.

### Factual Allegations

11. VDH is a state agency engaged in the production of goods for interstate commerce and/or uses handles goods which have moved in interstate commerce as such terms are defined in FLSA, employs ten (10) or more persons, and is an employer subject to the jurisdiction of the FLSA.

12. VDH hired Bolling as a Program Support Technician Senior (wage employee) on or about May 28, 1997, the position transitioned to full time employment effective October 10, 1997.

13. In 1999, Bolling was made aware of a classification reallocation request that was submitted by her supervisor Sheila Brewer, Vendor Manager (for other employees on the team) which did not include her position; Bolling submitted an appeal requesting the inclusion of her position. Her request was denied and she was left with no other recourse but to file a grievance. As a resolution to the grievance

filed, the agency was required to complete a compensation classification analysis of her position.

14. In 2000, after waiting approximately 18 months for the results of HR's analysis, Bolling discovered that Dr. Donald Stern (former Director of the Office of Family Health Services) had not forwarded the paperwork to Human Resources for the appropriate action.

15. Bolling contacted the State Equal Employment Office (EEO) to determine her next course of action whether to file a complaint and/or a grievance against the agency, she subsequently filed another grievance.

16. Regrettably only after Bolling filed the second grievance with the EEO office did the agency agree to perform a classification analysis of Bolling's position.

17. The Human Resource (HR) office completed their review shortly thereafter. Their findings were that the position was accurately classified and <u>did not</u> warrant a reclassification, upgrade and/or pay increase. However, after reviewing the report provided by HR, Bolling noted the analysis contained several inconsistencies. As a result she filed another complaint with the State EEO and Federal Equal Employment Opportunities Commission (EEOC) respectively.

18. The State EEO office after reviewing her complaint, conducted an independent classification and compensation analysis of Bolling's position. In March, 2001 as a result of their analysis her position was reclassified upward from Program Support Technician Senior grade 7 to WIC Program Representative (Healthcare Compliance Specialist I) grade 9 level A and recommended retroactive pay to June 1, 2000. She was awarded approximately 12 months retroactive pay.

**Acts of Retaliation**

19. During that same year (2000); while Bolling's EEO complaint was pending the agency decided to establish a new position of Banking Services Monitor at a higher pay grade. Bolling was told by Sheila Brewer her immediate supervisor this new position would be performing the same and/or similar duties as hers but at a higher skill level. Additionally, she could apply for the position as it would be a promotion (since the requested pay grade of 9; level B) salary was higher than her current salary of pay grade 7. Bolling was also told by management that when the position was filled she would no longer have the responsibility of monitoring the banking services contract and/or performing duties related to reimbursement, etc. (Note: At that time the plaintiff (Bolling) was the only African-American, female, WIC Program Representative employed by the Agency and the only team member to have any contract monitoring responsibilities and handle retailer reimbursement processing, etc.) The request to establish the Banking Services monitor position was postponed, after the ruling from EEO was received and the plaintiff position was reallocated as initiated by the EEO office. Bolling continued performing the banking services contract monitoring duties at the lower pay rate of grade 9 level A. When Bolling questioned Sheila Brewer, as to whether or not she would be paid at grade 9, level B as had been requested for the Banking Services Monitor position; Ms. Brewer's response; was "No, the HR Department had determined her position was accurately classified for performing the same/similar duties, and she would continue to be paid at the lower grade 9, level A and there would be no increase to her salary."

20. Moreover, during this same time frame Bolling's Employee Work Profile (EWP) standards were raised to unrealistic expectations as compared to the other WIC Program Representatives. In a revised EWP her contributor rating was changed to having to complete her duties 100 % error free, 100% of the time. Anything less would result in a below contributor rating for that duty and possibly overall below contributor depending upon the weight of the task. This requirement was not the same for her counterparts on the team. This issue was resolved after Bolling had an open door meeting with Dr. Stroube (who was the Commissioner at the time). She eventually received a revised EWP which contained the same benchmark standards as her counterparts.

21. In December, 2003 Bolling and the other WIC Program Representatives received notification from Ms. Brewer, that their role titles would be changed to Vendor Liaisons as was the case with the Operations and Nutrition teams; they were also informed that this role title change would not result in an increase to their pay grade and/or salaries. The Operation and Nutrition team liaisons were paid at a higher pay grade than the Vendor Liaison positions.

22. Bolling was informed by Ms. Brewer in November, 2005 that the Banking Services Monitor position had been approved, and would be assigned to the Business unit. Upon Bolling's completion of writing the banking operating procedures she performed; the duties related to banking services support would be transferred to this position. Bolling wrote the procedures as requested by management and they were approved. The position was filled in 2005; however Bolling was never allowed to train the individual in the Business Unit nor did management reduce or

transfer any of the additional banking duties she was required to perform. Note: Her EWP included her performing the training and/or transition of banking duties to this new position in the Business Unit for over 7 years; however the transition of these duties were never implemented.

23. In 2006, Bolling was assigned a larger geographic area and an increase in the number of stores and local agencies she was required to provide support to. Bolling was told by Ms. Brewer that management had decided that her counterpart an African-American male would no longer perform the routine duties assigned e.g. conduct store visits and/or provide retailer training. She was not given a specific reason why this re-assignment of duties occurred. (Note: This employee had the same role title and a higher salary than Bolling however he was not required to perform any on-site store visits and/or retailer training from 2006 until January 2010). This shift in duties added considerably to her workload.

24. In the upcoming years additional long term special projects were transferred to Bolling. In 2007, in retaliation for questioning the handling of the food list changes at several team meetings and because June Thompson, (a Caucasian female) refused to continue and/or accept this long term assignment; Bolling was appointed to serve on the Food List Committee. Moreover, at the termination of a Caucasian male, Bolling was assigned his special project of editing and coordinating the quarterly WIC retailer bulletin publication.

25. Bolling filed a grievance due to the disproportionate amount of work she had been assigned since 2006 and required to perform in contrast to her team mates. She also filed an internal grievance and a

complaint with State EEO requesting a classification/compensation analysis because of the increase in the workload and the complexity of the special projects, she was required to perform.

26. Bolling's second State EEO complaint was not processed because she was told personnel rules do not allow an employee to have an open grievance and/or complaint at the same time. At the direction of the VDH/HR office, Bolling sent an e-mail to Sheila Brewer, requesting that a classification/compensation analysis of her position be completed by the VDH/HR office. Ms. Brewer's response at that time was that Bolling's compensation/classification analysis request could not be addressed until her grievance was resolved. Bolling contacted VDH/HR only to find out later that this was incorrect.

27. In 2008, Bolling filed a complaint with the EEOC (Charge #438-2008-01434). In 2010, Bolling followed up with the EEOC office to determine the status her 2008 filing, only to find it had not yet been assigned to an investigator. She amended this charge in April, 2010 to include discrimination under the Equal Pay Act, (Charge #438-2010-00550).

28. On September 20, 2010, Bolling entered into a Mediation Agreement with the Virginia Department of Health in an effort to resolve her EEOC charges. As part of this mediation agreement VDH/HR was required to complete a compensation/classification analysis of a revised EWP that would be mutually agreed upon by Ms. Bolling and Ms. Brewer. Bolling received an e-mail notification from VDH/HR on March 3, 2011 regarding the compensation/classification analysis which stated their findings "were comparing the Work units current EWP, past EWP and Freda's

version of her position's EWP to the current benchmark the position appears to be appropriately allocated." This resulted in <u>no change to her pay grade or salary</u>. Plaintiff Bolling later requested via email a summary report of the analysis completed by VDH/HR; she subsequently received a brief one page statement that reiterated the email notification language.

29. During this same period the Office of Family Health Services (OFHS) contracted the services of George Pilarinos to assist with the reorganization. As part of this reorganization Mr. Pilarinos' conducted compensation/classification analyses of positions within (OFHS) included but not limited to the Vendor Liaison positions, which was completed in February 2011. The results of his findings were "with no change in the EWP or duties currently performed; the positions were underpaid and should be reallocated upward from Healthcare Compliance Specialist I (pay band 4A) to Program Administrative Specialist II (pay band 5A)." Additionally, Mr. Pilarinos' report confirms what Bolling had expressed to management for years that the complexity and nature of the work she performed along with the support provided statewide to the local health departments, retailers and contract monitoring duties, etc., warranted a reallocation and/or salary alignment.

30. The Department of Human Resource Management (DHRM) approved a 10% pay action based on the recommendations of the analysis completed by Mr. Pilarinos. Bolling along with the other Vendor Liaisons were awarded a position reallocation and salary increase (from pay band 4A to pay band 5A. In April, 2011 they received retroactive pay for six months from October 1, 2010.

31. Bolling filed another EEOC complaint in August, 2011 (Charge #846-2011-57404) requesting additional retroactive pay and in summary states that VDH breached the Mediation Agreement; as VDH failed to conduct a thorough, comprehensive, compensation analysis in support of the goals of the agency; and in accordance with the signed Mediation agreement. Additionally, by its own admission (in its email notification and summary report) VDH failed to compare Bolling's position with other similar positions within the division/agency. Furthermore, VDH's approach to the analysis was impacted by the incumbent and not the position or its assigned duties. This final EEOC charge (Charge #846-2011-57404) was dismissed on April 30, 2012 with notice of rights to sue.

32. Bolling's employer's (VDH) failure to justly reclassify her position on <u>two</u> occasions and correctly align it with other positions within the division establishes a <u>pattern of discriminatory, retaliatory practices against her for the previous grievances and/or complaints the plaintiff has filed.</u>

33. Despite Bolling completing equal work to other counterparts on their jobs, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions. Defendant VDH failed and/or refused to pay Bolling a minority female compensation equal to the plaintiff counterparts.

**FLSA Representative Action Allegations**

34. Defendants employed Bolling and similarly situated female/male non-whites employees and were required under the EPA and the FLSA to compensate Bolling on an equal basis as her counterparts.

35. Accordingly Bolling brings this representative action on behalf of herself.

36. **AS A PRESENT FEMALE MINORITY EMPLOYEE IN THE VIRGINIA DEPARTMENT OF HEALTH'S OFFICE OF FAMILY HEALTH SERVICES DIVISON OF COMMUNITY NUTRITION, WOMEN'S INFANT AND CHILDREN PROGRAM (WIC PROGRAM) SHE WAS COMPENSATED AT A RATE LESS THAN THE RATE AT WHICH VIRGINIA DEPARTMENT OF HEALTH COMPENSATES SIMILARLY SITUATED FEMALE/MALE/NON-WHITE EMPLOYEES FOR EQUAL WORK ON JOBS, THE PERFORMANCE OF WHICH REQUIRED EQUAL, SKILL, EFFORT AND RESPONSIBILITY, AND WHICH WERE PERFORMED UNDER SIMILAR WORKING CONDITIONS.**

37. There is a well-defined community of interest in the questions of law and fact involved in this cases which affect Bolling and the. Questions of law and fact in common to the plaintiff Bolling include but are not limited to the following:

    a. The amount of overtime wages due and owing by the Defendant to Bolling pursuant to EPA and FLSA;

    b. Whether Bolling is entitled to the declaratory relief prayed for below;

    c. The proper measure of Bolling's damages; and

    d. Whether Bolling is entitled to injunctive relief and the nature of such relief.

38. Bolling adequately represents a protected class and is committed to the vigorous prosecution of this action and hopes to retain competent counsel experienced in employment litigation.

39. This action may be maintained as a representative action because Defendant has as acted or refused to act on grounds generally applicable to Bolling thereby making appropriate final and injunctive relief or corresponding declaratory relief with respect to the plaintiff as an employee.

## COUNT I THE EQUAL PAY ACT

## 29 U.S.C. § 206(d)

## UNEQUAL PAY

40. Plaintiff Bolling incorporates the allegations in the forgoing paragraphs as though alleged herein.

41. Plaintiff Bolling is an "employee" as the terms are defined at 29 U.S.C. § 203(e).

42. Defendant is an "employer" as the term is defined at 29 U.S.C. § 203(d).

43. Defendant discriminated against Bolling on the basis of race and sex by compensating her at a rate less than the rate at which it pays wages to similarly situated employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility and which were performed under similar working conditions.

44. Defendants engaged in the pattern and practice of discrimination against Bolling's on the basis race and/or sex by compensating her at a rate less than the rate at which it pays wages to similarly situated employees for equal work on jobs, the performance of which required equal skill, effort and responsibility, and which were performed under similar working conditions.

45. Defendant willfully and/or intentionally failed and/or refused to pay Plaintiff Bolling equal wages as is required under the EPA.

46. Defendant's actions were taken with willful disregard for the rights of the Plaintiff Bolling under the EPA.

47. As a result of Defendant's unlawful conduct, Plaintiff Bolling suffered a loss of wages.

48. Plaintiff Bolling is owed unpaid wages by Defendant in an amount which will be determined upon review of Defendant's records and/or at the trial of this action.

49. For violations of the EPA and the FLSA, 29 U.S.C. § 216(b) allows Plaintiff Bolling to recover from Defendant, in addition to any judgment awarded, an additional equal amount as liquidated damages as well as interest on the monies due and owing. 29 U.S.C. § 216(b) further provides that Plaintiff Bolling may receive, without limitation, employment, reinstatement, promotion, the costs of this action, as well as reasonable attorneys' fee to be paid by Defendant.

## COUNT II FAIR LABOR STANDARDS ACT ("FLSA")

## 29 U.S.C.§ 215(a)(3)

### RETALIATION

50. Plaintiff Bolling incorporates the allegations in the forgoing paragraphs as though alleged herein.

51. Plaintiff Bolling is an "employee" as the terms are defined at 29 U.S.C. § 203(e).

52. Defendant is an "employer" as the term is defined at 29 U.S.C. § 203(d).

53. Defendants illegally retaliated against Plaintiff for engaging in a protected activity in violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3).

54. As a direct and proximate result of the Defendant's illegal retaliatory conduct, Plaintiff Bolling was caused to suffer damages.

[Summary of pleading] - 13

55. For violations of 29 U.S.C. § 215(a)(3), Plaintiff Bolling demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

    a. Reinstatement

    b. Promotion,

    c. Economic damages including front and back pay;

    d. Reasonable attorney's fees and costs;

    e. Compensatory Damages;

    f. Liquidated Damages;

    g. Punitive Damages; and

    h. Any other relief that this Court deems just and equitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bolling prays this Honorable court for the following relief:

    A. An order appointing Plaintiff Bolling and her future counsel of record to represent her in her FLSA claims;

    B. A preliminary and permanent injunction against the Defendant and its directors, officers, employees, agents, successors, employees and representatives, and any and all persons acting in concert with them from engaging in each of the unlawful practices and improper activities and practices, policies, customs and usages set forth herein;

    C. An order awarding a declaratory relief as requested herein as the Court deems appropriate;

    D. An order awarding restitution and/or disgorgement of profits;

E. Judgment against the Defendant in an amount of $49,000 in economic damages, liquidated damages, compensatory damages, and punitive damages to be determined at trial;

F. Pre-judgment interest

G. Re-employment, reinstatement, promotion, front pay, back pay or other equitable relief;

H. Interest due on unpaid wages;

I. A reasonable attorney's fee and court costs of this action and

J. Any other relief this Honorable Court deems just and proper to award.

**JURY DEMAND**

Plaintiffs demand a jury for all issues proper to be so tried.
Freda Bolling,
Pro Se

Dated this: September 4, 2012

*[signature]*
Freda G. Bolling, Pro se
2215 Q Street
Richmond, VA 23223-5149

## Certificate of Service

## Bolling v. Virginia Department of Health

## Case No.: 3:12-cv-00593-REP

I hereby certify that a true copy of the corrected Response to Defendant's Motion and Affidavit was mailed to the legal counsel for the defendant on September 4, 2012.

_____
Freda G. Bolling, Pro Se

_September 4, 2012_
Date